**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 200054-U

Order filed August 21, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0054 Circuit No. 19-CF-209 |
| JERMAINE LAWSON, | ) ) ) | Honorable Katherine S. Gorman, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE DAUGHERITY delivered the judgment of the court.
Justices Hauptman and McDade concurred in the judgment.

**ORDER**

¶ 1     *Held*:   (1) The evidence was sufficient to prove defendant guilty of armed habitual criminal. (2) The State did not violate defendant's due process right to a fair trial.

¶ 2     Defendant, Jermaine Lawson, appeals his conviction for armed habitual criminal. Defendant argues the State (1) failed to prove him guilty beyond a reasonable doubt of armed habitual criminal; and (2) violated his due process right to a fair trial by failing to correct false testimony and adopting that false testimony in closing argument. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4          Prior to the charges in this case, a jury acquitted defendant of unlawful possession of a

controlled substance and unlawful possession with intent to deliver a controlled substance in case

No. 18-CF-501. At the conclusion of that trial, defense counsel, referring to the instant case,

asked the State, "You're still waiting on the DNA on that one, right?" To which the State

answered, "[y]ep."

¶ 5          In the instant case, the State charged defendant with armed habitual criminal (720 ILCS

5/24-1.7(a) (West 2018)) and unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)).

¶ 6          Prior to trial, the State filed a motion to compel defendant to permit the taking of buccal

swabs for DNA testing. The circuit court granted the State's motion. Defendant proceeded to

trial with the same counsel who represented him in the prior case.

¶ 7          At defendant's jury trial, Deputy Cody Meeks testified that he stopped a vehicle driven

by defendant because of a broken left taillight. Meeks noted defendant's hand was shaking as he

removed his driver's license from his wallet, however; this is not apparent on Meeks's body

camera footage. Meeks described defendant as nervous and called for a canine unit due to

defendant's behavior. Following Meeks's call, Deputy Aaron Witt, Deputy Justin Oberholtzer,

and Deputy Austin Griggs arrived at the scene. Griggs operated a canine unit, and after he

arrived, defendant fled the scene.

¶ 8          Officers pursued defendant to a dead end where defendant then fled on foot. Defendant

ran behind an apartment complex and Meeks followed. Meeks and Witt described the area

behind the apartment complex as not highly trafficked and a yard that was not accessible by a

sidewalk. Additionally, a hill that descended to a wooded area was located a few feet from the

back of the apartments. There was a fence near the wooded area.

¶ 9     Meeks initially lost sight of defendant behind the apartments but shortly thereafter located defendant at the base of the hill on his hands and knees. Meeks believed that defendant may have fallen. Defendant tried to climb the fence and a brief struggle ensued between Meeks and defendant. Meeks pushed defendant away and deployed his taser. Meeks reloaded his taser with another cartridge. Defendant climbed over the fence. Meeks deployed his taser again. Meeks maintained sight of defendant and informed the other officers of the direction defendant was traveling and his description. Meeks returned to defendant's vehicle to help officers with the remaining occupants.

¶ 10    Deputy Joseph Harris found defendant behind a tree and took him into custody. After Harris apprehended defendant, Meeks told Witt where his taser cartridges were located. Witt searched the path that Meeks had chased defendant. Officers found a firearm with one bullet in the chamber and a separated magazine within a couple feet of Meeks's taser cartridge. Meeks described the firearm as "clean," stating that there was no debris and minimal condensation on the firearm, and it had been raining for some time. Photographs taken of the firearm when it was found showed it covered in minimal condensation and no debris. Meeks testified the firearm appeared to have not been there long.

¶ 11    On cross-examination, defense counsel asked Meeks, "[b]ut there was no testing that was done to see even if any DNA was available; correct?" To which Meeks answered, "[t]o my knowledge, no, there wasn't any done."

¶ 12    During closing arguments, defense counsel argued that the State did not test the firearm for DNA evidence. In response, the State argued that DNA evidence was not necessary. The jury found defendant guilty of armed habitual criminal and unlawful possession of a weapon by a felon.

¶ 13                              II. ANALYSIS

¶ 14                        A. Sufficiency of the Evidence

¶ 15    On appeal, defendant argues that the evidence was insufficient to prove him guilty beyond a reasonable doubt of armed habitual criminal.

¶ 16    When a defendant makes a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "In weighing evidence, the trier of fact is not required to disregard inferences which flow normally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Jackson*, 232 Ill. 2d 246, 281 (2009). "When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant." *Collins*, 106 Ill. 2d at 261. Thus, "the reviewing court must allow all reasonable inferences from the record in favor of the prosecution." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). "A conviction will be reversed only where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Belknap*, 2014 IL 117094, ¶ 67. We apply this standard of review "regardless of whether the evidence is direct or circumstantial." *People v. Norris*, 399 Ill. App. 3d 525, 531 (2010)

¶ 17    A person commits the offense of being an armed habitual criminal when "he or she receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of" certain enumerated offenses. 720 ILCS 5/24-1.7(a) (West 2018). In this case, the parties stipulated that defendant was convicted of two qualifying felony offenses so the only

4

element at issue is whether defendant possessed the firearm. Defendant argues that since there was no physical evidence connecting him to the firearm and no witnesses observed defendant in possession of the firearm, the evidence is insufficient to prove that defendant possessed the firearm.

¶ 18 "Criminal possession may be actual or constructive." *People v. Nesbit*, 398 Ill. App. 3d 200, 209 (2010). " '[C]onstructive possession of a firearm may be shown where the person has knowledge of the presence of the weapon and exercises immediate and exclusive control over the area where the firearm is found.' " *People v. Wise*, 2021 IL 125392, ¶ 25 (quoting *People v. Brown*, 2020 IL 124100, ¶ 11). "Whether there is knowledge and whether there is possession or control are questions of fact to be determined by the trier of fact." *People v. Schmalz*, 194 Ill. 2d 75, 81 (2001). "Constructive possession is frequently proven through circumstantial evidence alone." *People v. Bogan*, 2017 IL App (3d) 150156, ¶ 27. " 'Knowledge may be proven by evidence of a defendant's acts, declarations or conduct from which it can be inferred he knew the contraband existed in the place where it was found.' " *People v. Faulkner*, 2017 IL App (1st) 132884-B, ¶ 39 (quoting *People v. Ross*, 407 Ill. App. 3d 931, 936 (2011)).

¶ 19 Furthermore, a defendant's proximity to the weapon is relevant when determining constructive possession. *Wise*, 2021 IL 125392, ¶ 29. With regard to constructive possession, our supreme court in *Wise* recently noted that a weapon must be " 'in such close proximity that it can be readily used as though on the person.' " *Id.* ¶ 33 (quoting *People v. Liss*, 406 Ill. 2d 419, 422 (1950)). The *Wise* court stated that the firearm offense statutes were implemented to serve a specific deterrent purpose. *Id.* ¶ 31. To satisfy this purpose, " 'it would be necessary that the defendant have some type of *immediate access to* or *timely control over* the weapon.' " (Emphases in original.) *Id.* (quoting *People v. Condon*, 148 Ill. 2d 96, 110 (1992)).

5

¶ 20    Viewed in the light most favorable to the State, the evidence in this case established that defendant constructively possessed the firearm found near the area where Meeks attempted to apprehend defendant. Before this discovery, defendant exhibited a consciousness of guilt, as defendant, an individual with two prior felony convictions, fled a traffic stop involving a broken taillight when a canine unit arrived. See *People v. Harris*, 52 Ill. 2d 558, 561 (1972) (holding that evidence of flight is admissible as a circumstance tending to show consciousness of guilt). Meeks believed that defendant fell while fleeing, and defendant was on his hands and knees in the location where officers found a firearm. Defendant's actions inferentially indicated that he had knowledge of the firearm. Moreover, defendant's position gave him immediate access and timely control over the firearm. This positioning enabled defendant to make an instantaneous decision to use the firearm. Compare *People v. Sams*, 2013 IL App (1st) 121431, ¶ 13 (evidence was insufficient to establish constructive possession where defendant was never seen in proximity to firearm).

¶ 21    Additionally, the remote nature of the area where the firearm was found and condition of the firearm inferentially established that defendant had possessed it instead of another individual. Officers described the area in which Meeks's confrontation with defendant took place as an isolated backyard behind apartments. Meeks described the firearm as "clean," pointing out that while it had been raining for some time there was not much condensation, or anything else for that matter, covering the firearm. Photographs of the firearm corroborate Meeks's description. Meeks believed that the firearm had not been there for a long time. There is no evidence in the record to refute Meeks's description of the firearm nor is there evidence indicating that anyone other than defendant was in the area in which officers found the firearm. Compare *People v. Wright*, 2013 IL App (1st) 111803, ¶ 26 (evidence was insufficient to prove constructive

6

possession where police found a firearm near defendant in area in which there was already three other individuals). Therefore, the evidence inferentially proved that defendant constructively possessed the firearm.

¶ 22                                        B. False Testimony

¶ 23        Defendant argues the State violated his due process rights by failing to correct false testimony. Specifically, defendant argues Meeks's answer on cross-examination was false based on a prior conversation between defense counsel and the State that proves the State tested the firearm for DNA. Further, the State was aware that the testimony was false and rather than correcting it, the State adopted the false testimony in their closing argument. The State argues defendant forfeited review of this issue by failing to object to it and raise it in a posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Defendant responds that this issue violates his right to due process, and therefore, is not subject to forfeiture. See *People v. Bolton*, 10 Ill. App. 3d 902, 907 (1973) (citing *People v. Lueck*, 24 Ill. 2d 554 (1962), for the holding that a prosecutor's failure to correct witness testimony which he knew to be false denied defendant of his right to due process). In the alternative, defendant makes an ineffective assistance of counsel argument relating to testing the firearm for DNA.

¶ 24        Initially, we find that despite defense counsel's failure to properly preserve this issue for appellate review, forfeiture does not preclude our review. *Bolton* and *Lueck* remain good law and except this particular due process violation from the normal forfeiture principals. See *id.* Therefore, we proceed to determine whether error occurred.

¶ 25        The State's knowing use of perjured testimony to obtain a conviction violates a criminal defendant's due process rights. *People v. Barrow*, 195 Ill. 2d 506, 529-30 (2001). In addition, the State has an obligation to correct false testimony, even when the State did not solicit the

7

testimony. *People v. Lucas*, 203 Ill. 2d 410, 416-24 (2002). "A conviction obtained by the knowing use of perjured testimony must be set aside if there is any reasonable likelihood that the false testimony could have affected the jury's verdict." *People v. Olinger*, 176 Ill. 2d 326, 345 (1997). The standard " 'any reasonable likelihood that the false testimony could have affected the judgment of the jury' " is equivalent to the harmless error standard. *Lucas*, 203 Ill. 2d at 422 (quoting *People v. Coleman*, 183 Ill. 2d 366, 392 (1998)). "The same principles also apply when the State, although not soliciting the false testimony, permits it to go uncorrected when it occurs." *Barrow*, 195 Ill. 2d at 530.

¶ 26    The record establishes that the State did not fail to correct false testimony regarding the DNA testing, because the record establishes that Meeks's testimony that, to his knowledge, DNA testing was not done on the firearm was not false. Although the State initially began the process to test the firearm for DNA, it is clear that the DNA testing was not completed before the end of the trial. The DNA testing was not mentioned after the court granted the State permission to obtain a buccal swab from defendant, and no DNA test results were provided during the pretrial proceedings or introduced into evidence at trial. Therefore, Meeks's testimony was consistent with the incomplete testing indicated by the record.

¶ 27    Even if Meeks's testimony was false, there is no reasonable likelihood that this testimony regarding DNA testing on the firearm affected defendant's conviction. See *Olinger*, 176 Ill. 2d at 345. Meeks's mention of the DNA testing came up on cross-examination well after the State had presented significant evidence that established that defendant fled a traffic stop and was in close proximity to a firearm. Moreover, the State did not need direct evidence to prove defendant's guilt as it needed only to show that defendant constructively possessed the firearm which could be done through circumstantial evidence. See *Bogan*, 2017 IL App (3d) 150156, ¶ 27. As

8

discussed above, the trial evidence established beyond a reasonable doubt that defendant constructively possessed a firearm after. *Supra* ¶¶ 20-21.

¶ 28 In the alternative, defendant argues that defense counsel provided ineffective assistance by failing to: (1) elicit testimony that swabs of the gun were sent to the crime laboratory prior to trial; (2) argue that the State's failure to present evidence concerning results of the crime laboratory analysis of the swabs should lead the jury to conclude that the analysis of the swabs did not tie defendant to the gun; and/or (3) object to the State's failure to correct Meeks's testimony regarding DNA testing of the gun or the State's closing argument adoption of Meeks's false testimony and include these errors in a posttrial motion.

¶ 29 "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Domagala*, 2013 IL 113688, ¶ 36 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "More specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 694).

¶ 30 First, all of these claims necessarily assume that the State tested the gun for DNA and/or submitted it to the crime laboratory for testing. However, since the record does not establish the State submitted swabs to the crime laboratory or completed the DNA testing, we cannot say defense counsel's representation fell below an objective standard of reasonableness. See *Strickland*, 466 U.S. at 687; *People v. Enis*, 194 Ill. 2d 361, 377 (2000) ("The failure to satisfy either the deficiency prong or the prejudice prong of the *Strickland* test precludes a finding of ineffective assistance of counsel."). Second, defense counsel's decision not to pursue these issues

is attributable to reasonable trial strategy. See *People v. Jackson*, 2014 IL App (1st) 123258, ¶ 34 (attributing defense counsel's decision not to conduct DNA analysis to reasonable trial strategy not subject to a claim of ineffective assistance of counsel). If counsel had further inquired into or objected to this issue, counsel would have run the risk of the State completing the DNA testing which could have directly indicated that defendant possessed the firearm. Thus, defendant's ineffective assistance of counsel claims fail.

¶ 31                                         III. CONCLUSION

¶ 32          The judgment of the circuit court of Peoria County is affirmed.

¶ 33          Affirmed.