2024 IL App (1st) 230571-U
No. 1-23-0571
Order filed October 4, 2024

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CR 9331 |
| | ) | |
| JVARUS MCKNIGHT | ) | The Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice Tailor and Justice Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirmed, where State proved defendant possessed a firearm and statute barring felons from possessing firearms is constitutional.

¶ 2    A driver with a prior felony might worry about police officers finding a firearm in the car. Jvarus McKnight, who had a felony conviction, sped off when asked to get out of the car during a traffic stop, crashing a few blocks away. Officers found a loaded gun in the glove compartment.

¶ 3    McKnight argues that (i) the State failed to prove that he possessed the gun and (ii) the statute barring people with felonies from possessing firearms is unconstitutional. Neither of McKnight's attacks on his conviction succeed. We disagree and affirm.

¶ 4      McKnight's flight, prior felony, and control over the car all contribute to the inference that he knew about the gun. Furthermore, the statute defining his criminal offense (720 ILCS 5/24-1.1(a) (West 2020)) violates neither the United States nor the Illinois constitutions.

¶ 5                          Background

¶ 6      After a bench trial, the court found Jvarus McKnight guilty of unlawful use or possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2020)).

¶ 7      Officer Brian Hima testified that while on patrol with two others, he saw a grey BMW, a car he was on alert for, with an object hanging from its rearview mirror. He activated the siren and lights before stopping that car. Hima approached the driver's side and spoke with the lone occupant, McKnight, for less than a minute before McKnight suddenly sped off.

¶ 8      After hearing that a car had crashed blocks away, Hima and his partners drove there. He saw McKnight in the driver's seat. Several damaged cars were nearby. Officers arrested McKnight and searched the car. Hima opened the glove compartment and found a loaded gun.

¶ 9      Body-worn cameras captured the traffic stop and the scene after the crash. Clips of that footage showed: (i) McKnight begins, then stops, unbuckling his seatbelt before driving off as officers stand alongside the car, (ii) damaged cars at the crash site, and (iii) Hima finding a gun in the glove compartment. The parties stipulated that McKnight had a prior felony.

¶ 10      The trial court found McKnight guilty. It later denied McKnight's attack on the sufficiency of the State's proof, emphasizing McKnight "took off at a high rate of speed," "got in an accident," and thus showed "extreme evidence of consciousness of guilt[.]"

¶ 11                          Analysis

¶ 12    McKnight contends (i) the State failed to prove beyond a reasonable doubt that he possessed the loaded gun and (ii) the statute barring felons from possessing firearms (720 ILCS 5/24-1.1(a) (West 2020)) is unconstitutional under our federal and state constitutions. We disagree.

¶ 13                                    Sufficiency

¶ 14    We assess the proof in the light most favorable to the State and ask if a rational trier of fact could have found the elements beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Possession is the pertinent element. 720 ILCS 5/24-1.1(a) (West 2020) (defining possession as element of unlawful use or possession of weapons by felons). Possession can be actual or constructive. See *People v. Wise*, 2021 IL 125392, ¶ 24 (noting pertinent statute prohibits possession "on" and "about" a person). Because McKnight was not holding the gun, he did not actually possess it. *E.g.*, *People v. Gonzalez*, 151 Ill. 2d 79, 85 (1992) (State proved actual possession by presenting officer testimony about seeing defendant toss gun).

¶ 15    The State proves constructive possession by establishing defendant (i) knew the gun was present and (ii) had immediate and exclusive control over the area. *Wise*, 2021 IL 125392, ¶ 25. McKnight disputes both parts.

¶ 16                                    *Control*

¶ 17    Officers pulled McKnight over and, moments after the crash, again saw him sitting in the car. McKnight was the driver; no one else was present, so the trier of fact could have found that McKnight had immediate and exclusive control over the glove compartment. *People v. Chavez*, 327 Ill. App. 3d 18, 26 (2001) ("control of the vehicle rather than ownership of the vehicle which is pertinent to proof of control of the area").

¶ 18  McKnight does not dispute that, as the lone occupant, he drove and crashed the car. Instead, he insists the State needed to present proof that he (i) owned the car or (ii) had "other possessions" in it. The case he cites in support, however, demands nothing of the sort. In *People v. Bogan*, 2017 IL App (3d) 150156, officers had not seen the defendant inside the car but had found his possessions in it and knew the defendant was the registered owner. *Bogan*, 2017 IL App (3d) 150156, ¶¶ 4, 31, 42. Here, however, officer testimony and body cam footage proved McKnight's control. "[D]irect evidence of a defendant driving a vehicle is * * * sufficient evidence of control." *Id.* ¶ 42 (noting "issue of control is noncontroversial in the great majority of cases where a defendant is stopped while actually driving a vehicle").

¶ 19                              *Knowledge*

¶ 20  McKnight contends his presence in the car was not proof he knew the loaded handgun was in the glove compartment. He asserts that no evidence showed he (i) could see the gun from where he sat, (ii) attempted to retrieve or conceal the gun, or (iii) owned the car or often used it. In McKnight's view, the absence of this evidence shows he did not know about the gun, rendering evidence of his flight "meaningless."

¶ 21  We disagree. When analyzing the State's proof, "we review all the evidence, not some." *People v. Carpenter*, 2024 IL App (1st) 220970, ¶ 40 (citing *Collins*, 106 Ill. 2d at 261). McKnight errs by excluding evidence of his flight, overlooking the relevance of his prior felony, and minimizing his control over the car as its lone occupant.

¶ 22  Officers observed McKnight commit a traffic violation, speed away from the traffic stop when asked to get out of the car, and later exit within arm's reach of a loaded gun at the crash site. These facts, together with McKnight's felony conviction, allowed the trial court to infer McKnight

knew about the firearm's presence. See *People v. Anderson*, 2018 IL App (4th) 160037, ¶ 33 ("rational" inference defendant with prior felony was "armed" where his hands were near his waist while fleeing on foot and gun was within arm's reach at arrest).

¶ 23    To be sure, the trial court could not infer McKnight knew about the gun just because he was in the car when stopped for a traffic violation. *E.g.*, *Carpenter*, 2024 IL App (1st) 220970 ¶¶ 36-47 (holding State failed to prove defendant knew firearm was present and embedded within structure of driver's seat). Rather, McKnight's actions during the stop—speeding away rather than getting out as the officers apparently directed—suggest a guilty conscience. *Id.* ¶ 44 (defendant "did and said nothing during the encounter that would cause the officers to conjecture that he knew about the handgun"); *People v. Ingram*, 389 Ill. App. 3d 897, 901 (2009) (flight from car while ignoring demands to stop supported inference defendant possessed gun). And his felony, one that barred him from possessing firearms (720 ILCS 5/24-1.1(a) (West 2020)), offered a basis for inferring discovering the gun inspired his bolting from the stop.

¶ 24    The record does not reveal what the trial court meant when describing McKnight's flight as "extreme evidence." We hold only that a factfinder could have found the elements of constructive possession beyond a reasonable doubt. See *Collins*, 106 Ill. 2d at 261 (stating standard). We affirm McKnight's conviction for violating section 24-1.1(a).

¶ 25                                    Facial Challenge

¶ 26    McKnight also argues section 24-1.1(a) violates both the second amendment of the federal constitution and article I, section 22 of the Illinois constitution. He raises a facial challenge, the " 'most difficult challenge to mount successfully, ' " because it requires " 'establish[ing] that no set of circumstances exists under which [section 24-1.1(a)] would be valid.' " See *United States v.*

*Rahimi*, --- U.S. ----, 144 S. Ct. 1889, 1898 (2024) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)); see also *People v. Bochenek*, 2021 IL 125889, ¶ 10 (setting out same test).

¶ 27    Two laws primarily drive McKnight's challenge under both constitutions. The second amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Section 24-1.1(a) provides: "It is unlawful for a person to knowingly possess on or about his person * * * any firearm or any firearm ammunition if the person has been convicted of a felony[.]" 720 ILCS 5/24-1.1(a) (West 2020). We review McKnight's challenge *de novo* (*People v. Relerford*, 2017 IL 121094, ¶ 30) and hold it fails.

¶ 28                          *Federal Constitution*

¶ 29    McKnight contends that a law like section 24-1.1(a) "would have been unknown to those who ratified the [c]constitution" and thus violates the second amendment. He notes the State has the burden to justify section 24-1.1(a). But, because he attacks the law before this court for the first time (*In re N.G.*, 2018 IL 121939, ¶ 43), he proceeds in two steps. See *New York State Rifle & Pistol Ass'n, Inc., v. Bruen*, 597 U.S. 1, 10, 17 (2022) (holding second amendment protects right to public carry and clarifying analytical framework courts must apply).

¶ 30    First, McKnight contends "all Americans," even those with prior felony convictions, "fall within the [s]econd [a]mendment's protections" for "the people." Next, he contends no "true historical analogue" to section 24-1.1(a) exists because historical bans focused on "actual dangerousness, not status or criminal history." In his view, "shall not be infringed" means no law can now ban McKnight from firearm possession.

¶ 31                    *Applicability of Second Amendment*

¶ 32    The first step under *Bruen* asks whether the second amendment's plain language covers McKnight's conduct. *Bruen*, 597 U.S. at 18. McKnight contends his conduct, possessing a firearm, "presumptively" falls within the second amendment's sweep. *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 87, pet. for leave to appeal, No. 130153 (filed Oct. 30, 2023) (holding second amendment's "keep and bear arms" language encompasses possession); but see *People v. Travis*, 2024 IL App (3d) 230113, ¶ 26 (discussing split in authority on this issue); *United States v. Williams*, 113 F.4th 637, 645-46 (6th Cir. 2024) (same). We assume without deciding that the second amendment's protection of "the people" includes McKnight.

¶ 33                                    *History and Tradition*

¶ 34    The second step asks whether section 24-1.1(a) is rooted in this nation's history and tradition of firearms regulation. *Bruen*, 597 U.S. at 33-34. McKnight contends no "true historical analogue" to section 24-1.1(a) exists because historical bans focused on "actual dangerousness, not status or criminal history." We disagree.

¶ 35    Any search for a true historical analogue, as McKnight understands it, misplaces the Supreme Court's focus. See *Rahimi*, 144 S. Ct. at 1898; see also *id.* at 1925 (Barrett, J., concurring) ("historical regulations reveal a principle, not a mold"). Instead, we ask whether section 24-1.1(a) aligns with the "principles that underpin our regulatory tradition." *Id.* at 1898.

¶ 36    Reasoning by analogy, as *Bruen* instructs, section 24-1.1(a) finds historical analogues in laws pre-dating our country's founding. Early English kings, Parliament, North American colonists, and American founders all "believed that certain classes of people posed a great risk of violence[:] Thus, until those individuals could show they did not pose such a risk, they could be forbidden from owning firearms." *Williams*, 113 F.4th at 650; see also *Travis*, 2024 IL App (3d)

230113, ¶ 31 (noting "concept of disarming criminals dates at least to Pennsylvania's ratifying convention").

¶ 37    Governments then and now have presumptively disarmed entire groups. *Williams*, 113 F.4th at 656-57. Section 24-1.1(a) presumptively disarms people with felony convictions but does not violate the second amendment. Rather, section 24-1.1(a) controls the dangers posed by firearms and those who might use them to harm. See *Travis*, 2024 IL App (3d) 230113, ¶ 43. Contrary to McKnight's contention, historical analogues to section 24-1.1(a) would have been known to our founders: Section 24-1.1(a) does not violate the second amendment.

¶ 38    *Illinois Constitution*

¶ 39    McKnight concedes his "substantive analysis" under the federal and state constitutions is "the same." Thus, his contention under article I, section 22 of the Illinois constitution fails for similar reasons. See *id.* ¶ 43 (holding defendant "failed to demonstrate the challenged statutes violate the Illinois Constitution either facially or as applied to him").

¶ 40    Additionally, because we have assumed "the people" under the second amendment includes McKnight, we need not address his claim that our constitution's use of "the individual citizen" somehow differs from the federal constitution's use of "the people." Likewise, we need not decide whether our constitution's use of "[s]ubject only to the police power" improperly limits his right under the second amendment.

¶ 41    Affirmed.