NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241248-U

NO. 4-24-1248

IN THE APPELLATE COURT

FILED
December 11, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| KEON D. NICHOLS, | ) | No. 23CF344 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Paul P. Gilfillan, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court
Justices Zenoff and Grischow concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Because the record does not show what information about two witnesses' testimony was available to defense counsel prior to trial, defendant's claim of ineffective assistance of counsel is not amenable to resolution on direct appeal.

¶ 2   Defendant Keon D. Nichols appeals from his conviction of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2022)). Defendant argues that he received ineffective assistance of counsel where defense counsel elicited testimony from defense witnesses that contradicted defendant's theory of the case. For the reasons that follow, we affirm.

¶ 3                      I. BACKGROUND

¶ 4   At trial, it was undisputed that (1) defendant was a felon, (2) in April 2023, he was driving a car in which a handgun and ammunition were found, and (3) he owned and regularly drove the car. Therefore, the central disputed issue at trial was whether defendant knew the gun

was in the car (see *id.* (requiring *knowing* possession)), or more accurately, how the gun could have ended up in defendant's car without his knowledge (see *People v. Bogan*, 2017 IL App (3d) 150156, ¶ 46 (holding that the jury could reasonably infer that a defendant with "regular, ongoing control of [a] vehicle" "would know what was in that vehicle"); *People v. Smith*, 2020 IL App (3d) 160454, ¶ 37 (noting several factors the trier of fact may rely on in inferring knowledge)). Defendant's defense at trial was that the gun must have been placed in his vehicle by his recently deceased brother, Eric.

¶ 5        Before trial, the parties stipulated that "on November 12, 2022, Eric Lee Nichols died[,] and at the time of his death he owned a gun, registered in East Peoria[,] and possessed a[ ] FOID card." The parties also stipulated that defendant was a convicted felon.

¶ 6        The evidence at defendant's jury trial revealed that, in April 2023, defendant was involved in a traffic stop for speeding. He was removed from his vehicle due to improperly transporting cannabis and confirming its presence to officers. When the vehicle was searched, a loaded semiautomatic handgun was found between the driver's seat and the center console; a loaded, extended magazine was found in a black bag sitting directly behind the center console.

¶ 7        The firearm was placed on the hood of the squad car where defendant was seated. Defendant waived his *Miranda* rights (see *Miranda v. Arizona*, 384 U.S. 436 (1966)). The State played the body-worn camera footage of the search and the ensuing conversation with defendant. The footage showed the officer retrieving the firearm and extended clip from defendant's vehicle during the search. After defendant agreed to answer questions, he was asked where he obtained the gun. Defendant said that it was his deceased brother's gun. Defendant nodded when asked if he "kinda inherited it." Defendant acknowledged he was a felon, and when told that he knew that he should not have been in possession of firearms, he stated, "I know." Defendant never mentioned

he did not know the gun was in the vehicle.

¶ 8        The officer who spoke to defendant on the scene testified consistently with the video. A Peoria County sheriff's deputy who assisted with the traffic stop identified the firearm, marked as People's Exhibit 2, as the one found in defendant's vehicle. Although this firearm was introduced into evidence, no evidence was introduced as to whether it was registered to Eric in East Peoria.

¶ 9        Tonya Robertson, defendant's mother, testified that she was aware of Eric having only one firearm and she knew he kept the records for his firearm in a safe in his room at her house. After he died, Tonya's brother, John Ellington, took the firearm from the safe, and she did not see it again. Tonya never saw defendant with the firearm. Tonya claimed that Eric frequently drove defendant's vehicle, including on the day he died. Tonya had also driven the vehicle. Defendant did not drive his vehicle very often after his brother's death, and Tonya had not cleaned out the vehicle after Eric died.

¶ 10        Defendant's uncle, John Ellington, testified that Eric owned a firearm and showed it to him after he bought it, but he was not aware of Eric owning any other firearms. John took the gun from Eric's gun safe after he died, and he still had the handgun at the time of his testimony. John knew that Eric and Tonya had driven defendant's vehicle, and he had also driven the vehicle at times but had never searched for a firearm.

¶ 11        Defendant's cousin, Isaack Ellington, was close with Eric and knew that he owned a black Taurus 9-milimeter handgun that had "a beam" and an extended magazine. He had last seen Eric with the firearm two days before he died. Isaack knew that defendant let Eric use his vehicle. Isaack had also driven the vehicle and continued to do so after Eric died, but he never searched the vehicle for a firearm. Isaack stated that defendant kept his vehicle very clean.

¶ 12 Defendant testified that he was unaware of the firearm in his vehicle, but he acknowledged that he did not tell police officers as much at the time of the search. His late brother, Eric, regularly drove his vehicle. Defendant had been in the vehicle numerous times following his brother's death, but he had not thoroughly cleaned it out or searched it for a firearm. He knew the black bag that contained the extended clip was in the vehicle, but he never looked through it because it belonged to his deceased brother.

¶ 13 The jury found defendant guilty of unlawful possession of a weapon by a felon. Defendant's motion for a new trial was denied, and he was sentenced to four years' imprisonment.

¶ 14 This appeal followed.

¶ 15 II. ANALYSIS

¶ 16 Defendant's sole argument on appeal is that his counsel was ineffective for eliciting testimony that cast doubt on the defense theory of the case. Specifically, defendant argues that when defense counsel elicited testimony from Tonya and John that John was in fact in possession of Eric's gun at the time of trial, their testimony irreparably undermined the defense theory of the case and damaged defendant's credibility.

¶ 17 The sixth amendment to the United States Constitution guarantees defendants the right to the assistance of counsel for their defense (see U.S. Const., amends. VI, XIV), and " 'the right to counsel is the right to the effective assistance of counsel.' " *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). Under *Strickland*, a defendant alleging that his counsel was ineffective has the burden of showing both deficiency and prejudice. *Id.* at 687. To satisfy the deficiency prong, "the defendant must prove that counsel made errors so serious, and that counsel's performance was so deficient, that counsel was not functioning as the 'counsel' guaranteed by the sixth amendment." *People v. Evans*, 186

- 4 -

Ill. 2d 83, 93 (1999). To satisfy the prejudice prong, "[t]he defendant must prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the trial." *People v. Houston*, 229 Ill. 2d 1, 4 (2008).

¶ 18        We will consider a claim of ineffective assistance of counsel for the first time on direct appeal unless the claim depends on facts not in the record on appeal. See *People v. Veach*, 2017 IL 120649, ¶¶ 46-48. Our standard of review is *de novo*. *People v. Merriweather*, 2022 IL App (4th) 210498, ¶ 40.

¶ 19        On appeal, the State claims that the record is insufficient to evaluate counsel's strategy at trial. See *Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

¶ 20        It is clear that defendant's theory of the case was that he was unaware of the firearm found in his vehicle and that it must have belonged to his late brother, Eric. It is easy to understand why defense counsel would have sought out witnesses to prove that Eric did, in fact, own a gun that was at least similar to the one found in defendant's car, even if there was no exact identification of it ever made. Calling family members to corroborate defendant's testimony about Eric's gun ownership and his frequent use of defendant's vehicle made perfect sense. However, things went awry when the family witnesses gave testimony suggesting that the gun belonging to Eric *could not have been the one found in defendant's car* because that gun was found in a safe after Eric died and defendant's uncle still possessed it.

¶ 21        Evaluating defense counsel's decision to call these witnesses requires us to know

what he expected their testimony to be. While the record expresses the answers given by the witnesses on the stand, we are unaware of what these witnesses told defense counsel prior to testifying. One could certainly make the case that counsel was ineffective for calling these witnesses if he knew that instead of corroborating defendant's "brother's gun" theory, they would deflate it. We cannot discern from this record, however, whether he proceeded with this knowledge or was surprised by the witnesses' testimony. Might the witnesses have embellished, thinking that they were assisting the defense theory without realizing they were disproving it? We note that even the State did not fully appreciate the significance of this testimony. In its closing argument, the State continued to argue the case as if the gun found *was* Eric's, focusing instead on the viability of defendant's claim that he did not know his brother's gun was in his car.

¶ 22     Of course, if defense counsel failed to act reasonably to learn what testimony the witnesses might give in this regard, that might also constitute ineffective assistance. See, *e.g.*, *People v. Coleman*, 183 Ill. 2d 366, 398 (1998) (noting that the failure to interview witnesses may be indicative of deficient representation). Once again, however, we do not know what opportunity counsel had to interview the family witnesses.

¶ 23     Accordingly, we decline to address defendant's claim of ineffective assistance of counsel on direct review, as it is better suited for collateral review. As a matter of issue preservation, we note that defendant may raise this claim in a postconviction proceeding, where a complete record can be further developed for our review. See *People v. McGath*, 2017 IL App (4th) 150608, ¶ 43.

¶ 24                              III. CONCLUSION

¶ 25     For the reasons stated, we affirm the trial court's judgment.

¶ 26     Affirmed.