2021 IL App (2d) 190289
No. 2-19-0289
Opinion filed April 20, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CF-1028 |
| SAMANTHA L. MOLNAR, | ) ) ) | Honorable Donald M. Tegeler Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices McLaren and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Samantha L. Molnar, appeals her conviction of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2018)). She contends that the trial court erred in denying her motion to suppress a pill bottle containing alprazolam (Xanax) because police seized the bottle without a warrant. However, the court found that the warrantless seizure was valid under the plain-view doctrine because the bottle's incriminating nature was immediately apparent. We affirm.

¶ 2                              I. BACKGROUND

¶ 3    Defendant was arrested on May 20, 2018, and was later indicted on three counts of unlawful possession of a controlled substance: cocaine (count I), amphetamine (count II), and

alprazolam (count III). Relying on *People v. Humphrey*, 361 Ill. App. 3d 947 (2005)—a case involving application of the plain-view doctrine, defendant moved to suppress evidence.

¶ 4     The trial court heard the motion on December 20, 2018. Patrol officer Nicholas Mondek testified that, on May 20, 2018, he responded to a call involving two vehicles stopped by police in relation to a call about a possible altercation. Mondek approached and spoke to defendant, who was in the front passenger seat of one of the vehicles. Mondek testified that his body camera recorded the interaction with defendant. The bodycam video was played for the court.

¶ 5     In the video, Mondek stepped up to the vehicle and asked defendant if he could talk with her "real quick." Defendant stepped out of the vehicle without being asked. After she did so, Mondek, who was flashing a light into the front passenger area, asked defendant, "What's with the pills right there?" Defendant responded that it was her Xanax. Without being asked, defendant reached into the car and took out what appeared to be a pill bottle. The bottle had no label. She held the bottle up, stating that her sister had just died. Mondek reached his hand out and asked, "Can I see the pills?" Defendant responded, "Yeah," and handed him the bottle. Mondek shone his flashlight into the bottle, revealing that it contained pills and a plastic baggie. He then asked defendant, "Why do you have your pills in a pill bottle with no—?" Mondek's voice trailed off as he pointed to the bottle, apparently indicating the lack of a label. Defendant said that she brought the Xanax from her house and that her husband did not know that she took Xanax. Mondek asked defendant if she had a prescription for the pills, and she said, "No, I got them from somebody." Another officer arrived and also asked defendant if she had a prescription for the pills, and she said that she did not. She said that she did not know what was in the baggie inside the bottle.

¶ 6     After the video was played, Mondek testified that it was an accurate portrayal of his interaction with defendant. Mondek testified that, when defendant stepped out of the vehicle to

speak with Mondek, he saw a pill bottle on the front passenger seat. Mondek could tell from where he was standing that the bottle was unlabeled and that it contained pills and "a plastic baggie or something." When Mondek questioned defendant about the pills, she immediately said that they were "my Xanax." Mondek testified that he had previous experience with Xanax and knew that it was a controlled substance. When he asked to see the pills, he already believed that they were illegal, although defendant had not yet told him that she did not have a prescription for them. Examination of the bottle showed that it contained different types of pills, including Xanax, and also two plastic baggies with residue in them. Defendant was arrested for possession of a controlled substance. She was charged based on the pills and the residue in one of the plastic bags, which tested positive for cocaine.

¶ 7    The trial court denied the motion to suppress. The court agreed with the State that—based on (1) defendant's admission that the bottle contained Xanax, (2) Mondek's knowledge that Xanax is a controlled substance, and (3) Mondek's observation, from his standpoint outside the car, that the bottle had no prescription label—Mondek immediately had probable cause to seize the bottle. The court distinguished those circumstances from *Humphrey*. There, an officer testified that he did not know that the pills were contraband when he seized them or that a crime had been committed. See *Humphrey*, 361 Ill. App. 3d at 950-51.

¶ 8    On the day of trial, the State dismissed count II (amphetamine). The case proceeded to a stipulated bench trial on counts I (cocaine) and III (alprazolam). The court found defendant guilty on count III but not guilty on count I. Defendant's motion for a new trial was denied, and she was sentenced to probation. She appeals.

¶ 9                                    II. ANALYSIS

¶ 10    Relying on *Humphrey*, defendant argues that the trial court erred when it denied her motion to suppress. She contends that Mondek lacked probable cause to seize the bottle because he did not know if she had a prescription. The State argues that the seizure was legal because defendant consented to Mondek's request to see the pill bottle or, in the alternative, that the plain-view doctrine applied to the seizure. We assume, without deciding, that Mondek seized the pills from defendant, and we hold that the warrantless seizure was justified under the plain-view doctrine.

¶ 11    The fourth amendment to the United States Constitution protects individuals from unreasonable searches and seizures. U.S. Const., amend. IV. In reviewing a trial court's ruling on a motion to suppress evidence, we uphold factual findings unless they are against the manifest weight of the evidence. *People v. Jones*, 215 Ill. 2d 261, 268 (2005). However, we review *de novo* the ultimate legal question of whether the suppression of evidence is warranted. *People v. Luedemann*, 222 Ill. 2d 530, 542-43 (2006) (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).

¶ 12    Generally, a search and seizure is reasonable under the fourth amendment only if the government first obtains a warrant issued after a finding of probable cause. *Illinois v. McArthur*, 531 U.S. 326, 330 (2001). "Probable cause exists when the totality of the facts and circumstances known to the officers is such that a reasonably prudent person would believe that the suspect is committing or has committed a crime." (Internal quotation marks omitted.) *People v. Garvin*, 219 Ill. 2d 104, 126 (2006). However, the plain-view doctrine authorizes the warrantless seizure of an illegal item visible to a police officer whose access to the item has some prior justification under the fourth amendment and who has probable cause to suspect the item is connected to criminal activity. *Illinois v. Andreas*, 463 U.S. 765, 771 (1983). An officer may seize property that is in plain view if three requirements are met: (1) the officer is lawfully located in the place where he

- 4 -

observed the object; (2) the object is in plain view; and (3) the object's incriminating nature is immediately apparent. *People v. Garcia*, 2012 IL App (1st) 102940, ¶ 4.

¶ 13    On appeal, defendant does not dispute that the bottle was in plain view or that Mondek was lawfully located by the vehicle when he viewed it. The only issue is the third requirement. Defendant contends that the incriminating nature of the bottle of pills was not apparent until after Mondek seized it, because only then did defendant admit that she lacked a prescription for the pills.

¶ 14    " 'Plain view' requires probable cause to permit a seizure." *Jones*, 215 Ill. 2d at 272. If the officer lacks probable cause to believe that the object in plain view is contraband without conducting some further search of the object, *i.e.*, if the object's incriminating nature is not immediately apparent, its seizure is not justified under the plain-view doctrine. *Jones*, 215 Ill. 2d at 272 (citing *Minnesota v. Dickerson*, 508 U.S. 366, 374-75 (1993)). The "immediately apparent" or "probable cause" element requires sufficient evidence to justify the reasonable belief that the defendant has committed or is committing a crime. *Jones*, 215 Ill. 2d at 273-74; *Humphrey*, 361 Ill. App. 3d at 951.

¶ 15    Probable cause is "not a high bar." (Internal quotation marks omitted.) *District of Colombia v. Wesby*, 583 U.S. ___, ___, 138 S. Ct. 577, 586 (2018). "It exists if, from the standpoint of an objectively reasonable officer, the items or events at issue create a reasonable probability that defendant committed or is committing a crime." *People v. Lee*, 2018 IL App (3d) 160100, ¶ 4 (citing *Wesby*, 583 U.S. at ___ n.2, 138 S. Ct. at 584 n.2). Thus, while a mere hunch is insufficient to support a seizure, "a police officer views the facts 'through the lens of his police experience and expertise' and 'may draw inferences based on his own experience in deciding whether probable cause exists.' " *People v. Petty*, 2017 IL App (1st) 150641, ¶ 31 (quoting *Ornelas*, 517 U.S. at 699-

700). Probable cause to believe that a package contains illegal drugs does not require absolute certainty of its contents on the officer's part. *People v. Sinegal*, 409 Ill. App. 3d 1130, 1135 (2011) (citing *Texas v. Brown*, 460 U.S. 730, 742 (1983)). An officer is not required to "know" that the item he or she sees is contraband or evidence of a crime. *Humphrey*, 361 Ill. App. 3d at 951.

¶ 16     The United States Supreme Court has discussed the concept of an object's "immediately apparent" criminality, calling the phrase "an unhappy choice of words." *Brown*, 460 U.S. at 741. Rather, "probable cause is a flexible, common-sense standard." *Id.* at 742.

> "It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' [citation], that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." (Internal quotation marks omitted.) *Petty*, 2017 IL App (1st) 150641, ¶ 32 (quoting *Brown*, 460 U.S. at 742).

All that is required is a " 'practical, nontechnical' " probability that incriminating evidence is involved. (Internal quotation marks omitted.) *Id.* (quoting *Brown*, 460 U.S. at 742).

¶ 17     Defendant argues that *Humphrey* controls this case. There, a state police trooper stopped a motorist for speeding. During the stop, the trooper saw a container holding several hundred pills near the feet of the defendant, who was the front seat passenger. The defendant did not answer when the trooper asked what the pills were. However, the defendant handed the pills over to the trooper when asked to do so and then told the trooper that they were pseudoephedrine. The trooper again asked what the pills were for, and the defendant said that he got the pills in Wisconsin and was taking them to Missouri to make methamphetamine. The trooper found more pills scattered throughout the car. The trooper had not dealt with pseudoephedrine before and did not know at the time whether possession of it was an arrestable offense. While he thought that the pills could be

contraband based on the amount of them, he said that, when he searched the car, he " 'was not exactly sure what the pills were.' " *Humphrey*, 361 Ill. App. 3d at 949. The State charged defendant with unlawful possession of methamphetamine manufacturing chemicals, and the trial court granted the defendant's motion to suppress. We affirmed, holding that the plain-view doctrine did not apply, because the pills' incriminating nature was not immediately apparent to the trooper. We noted that the trooper "did not know what the pills were, apart from being told, after he saw them and was handed the container, that they were pseudoephedrine." *Id.* at 951. Moreover, the trooper "was not sure, even after searching the car, if possession of the pills was an arrestable offense." *Id.* "Viewing something without understanding what one is viewing, even requiring an explanation of what one is viewing, is not plain view." *Id.*

¶ 18    Here, *Humphrey* is distinguishable, and the plain-view doctrine applies. In *Humphrey*, the trooper specifically admitted that, when he seized the pills, he did not know what the pills were or whether possessing them was a crime. Based on these admissions, we held that the trooper lacked probable cause to believe that the pills were contraband. In contrast, here, before Mondek even took control of the pills, he believed that they were contraband. Defendant told Mondek that the pills were Xanax, which Mondek knew to be a controlled substance requiring a prescription. Based on this knowledge plus his observation that the pills were in an unlabeled bottle that also contained a baggie, Mondek had probable cause to believe that defendant lacked a prescription for the pills and thus was committing a crime. "A person to whom or for whose use any controlled substance has been prescribed or dispensed by a practitioner *** may lawfully possess such substance only in the container in which it was delivered to him or her by the person dispensing such substance." 720 ILCS 570/312(g) (West 2018). Defendant argues that this provision says nothing to suggest that the original label must remain on the bottle. Nevertheless, the logical inference from an

unlabeled bottle containing Xanax plus a plastic baggie is that the bottle is not the original container in which the Xanax was dispensed. Thus, the pills' incriminating nature was immediately apparent, and Mondek had probable cause to seize them under the plain-view doctrine. Because we determine that the pills were lawfully seized, we need not and do not decide whether there was any seizure at all because defendant consented by giving Mondek the bottle when he requested it.

¶ 19                                III. CONCLUSION

¶ 20     For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 21     Affirmed.

---

**No. 2-19-0289**

---

| | |
|---|---|
| **Cite as:** | *People v. Molnar*, 2021 IL App (2d) 190289 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 18-CF-1028; the Hon. Donald M. Tegeler Jr., Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Kerry Goettsch, of State Appellate Defender's Office, of Elgin, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Joseph H. McMahon, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and Lynn M. Harrington, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---