2023 IL App (1st) 220920

No. 1-22-0920

Second Division
September 26, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19 CR 9026 |
| KYRA MALLETT, | ) ) | Honorable Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE COBBS delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1     Following a bench trial, defendant-appellant Kyra Mallett was found guilty of aggravated unlawful use of a weapon (AUUW) and was sentenced to two years' probation. Prior to trial, defendant filed a motion to quash arrest and suppress evidence, which the trial court denied. On appeal, defendant argues that (1) the trial court erred in denying her motion to quash and suppress because the police lacked probable cause to search her car and (2) the State failed to present sufficient evidence that she constructively possessed the gun recovered from her car. For the reasons that follow, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3      On May 30, 2019, following a traffic stop and a subsequent search of her car, defendant was charged with AUUW (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5), (a)(3)(C) (West 2018)).

¶ 4      On July 9, 2020, defendant filed a motion to quash arrest and suppress evidence, contending that the search and seizure of her car was not justified where there was no valid search or arrest warrant and no exception to the warrant requirement justified the stop and arrest of defendant or the search of her car.

¶ 5      Prior to the hearing on the motion, the State offered two years' misdemeanor probation, which defendant rejected.

¶ 6      On July 28, 2021, a hearing was held on defendant's motion to quash arrest and suppress evidence. The following evidence was presented.

¶ 7      Chicago police officer Carlos Yanez, Jr., testified that, on May 30, 2019, he was on patrol with two other officers, Officer Julian Rodriguez and Officer Daniel Symons, in an unmarked police car. The officers were traveling eastbound on 71st Street at 12:51 p.m. when they attempted to curb a Volkswagen Tiguan as it turned onto Ashland Avenue. In the car with defendant, who was driving, was a passenger in the front seat. The basis for the stop was defendant's failure to signal 100 feet prior to turning, as is required under city ordinance. According to Officer Yanez, defendant's car was stopped at the red light and then the turn signal was activated. The officers had neither a warrant for defendant nor one to search this car. Defendant stopped the car near 7122 Ashland Avenue, which is in the first block after the intersection.

¶ 8      Officer Yanez and Officer Symons approached the passenger side of the car, and Officer Rodriguez approached defendant on the driver's side. For the safety of the officers, Officer Yanez asked the passenger if he had a firearm owners identification (FOID) card or concealed carry

license (CCL). At the same time, Officer Rodriguez requested defendant's driver's license. When defendant opened a compartment to the left of the steering wheel to retrieve her documentation, Officer Rodriguez opened the driver's side door, reached into the compartment, recovered a blue-tinted bag containing white pills, and asked defendant what the pills were. Officer Yanez testified that he believed the bag contained narcotics because of the packaging. Defendant stated that the pills were hydrocodone for a C-section procedure and she did not have a prescription for them with her.

¶ 9     At Officer Rodriguez's request, defendant stepped out of the car, as did the passenger. Both individuals were walked to the back of the car. At that point, Officers Rodriguez and Symons searched defendant's car. Using the car keys, which were still in the ignition, Officer Symons unlocked the glove compartment and recovered a firearm. Defendant and the passenger were then handcuffed. Neither individual admitted to ownership of the gun.

¶ 10    Officer Yanez was wearing a body camera at the time, which recorded the traffic stop. The footage was played for the court and Officer Yanez narrated the recording. The recording showed that Officer Yanez walked to the passenger side of the car while Officer Rodriguez spoke to defendant. Defendant then leaned down and reached into a compartment to the left of the steering wheel, at the same time that Officer Yanez asked the passenger if they had a FOID card or a CCL. Then, Officer Rodriguez opened the driver's door, reached down, and is seen holding a "blue, clear knotted bag" containing "white pills." Officer Yanez at this point testified: "From my experience, the way I have seen narcotics packaged, I believe it to be narcotics." On the recording, defendant then stated that the pills are hydrocodone for her C-section, from which she still has a scar and she has them packaged in that manner so "they wouldn't be making all that noise." At that point, the

other officers walk over and place both individuals in handcuffs based on the recovery of the gun. Again, both individuals denied having a FOID or CCL.

¶ 11    On cross-examination, Officer Yanez clarified that he first saw defendant's car as they were approaching the intersection of 71st Street and Ashland Avenue. He observed defendant's car in the left lane, and she merged into the right-hand lane, came to a stop at the red light, and activated her turn signal once the light turned green. There were one or two cars between defendant's car and the intersection.

¶ 12    Officer Yanez testified that he had been a police officer for six years at that point, had received narcotics training, and had been involved in over 100 narcotics arrests. Based on his training and experience, he believed the white pills in the blue plastic bag to be narcotics. Officer Yanez testified that he asked defendant why the pills were packaged in that way if she had a prescription, and she responded that she did not like the sound of the pill bottle rattling around in the car. He further testified that "whenever you're prescribed a narcotic prescription, it's supposed to be in prescription bottle with your name on it," which he stated was a law but he could not recite the exact statutory provision.

¶ 13    Officer Rodriguez was also wearing a body camera, which recorded the stop. Officer Rodriguez's body camera footage was introduced into evidence, and Officer Yanez testified that he had reviewed the footage prior to the hearing. In the footage, Officer Rodriguez asked defendant for her driver's license, and when she pulled the documents out of a compartment next to the steering wheel, Officer Rodriguez opened the driver's door and asked defendant "what are all those pills right there?" She stated that they were hydrocodone "for my pregnancy, sir, I have a C-section scar right here." He instructed defendant to step out of the car because the pills are "packaged not in a prescription bottle" and he needed to confirm what the pills are. He asked if she has a

prescription, and she responded, "not with me." She denied having any medical paperwork for the pills. Moments later, both individuals are placed in handcuffs after the gun was found in the glove compartment.

¶ 14    On redirect examination, Officer Symons's body camera footage was introduced into evidence. Officer Yanez narrated the footage, stating that it showed Officer Symons opening the glove compartment, observing a firearm, removing the firearm, clearing the round in the chamber, and placing the firearm in his pocket for custody.

¶ 15    On September 8, 2021, the trial court heard arguments on the motion.

¶ 16    On September 20, 2021, the trial court denied the motion to quash arrest and suppress evidence. In so ruling, the court first stated that the stop of defendant was valid based on defendant's failure to signal 100 feet prior to turning right in violation of city ordinance. As for whether the plain view exception applied, the court stated that the officers did not have to know at the moment the bag of pills was observed that "the item was in fact narcotics" because they "wouldn't know that until after it was tested eventually." The court went on to state that the officers believed, based on their experience with narcotics, that the pills were contraband, and after defendant stated that the pills were narcotics for her medical issues, the officers had probable cause to search the car based on the belief that there might be more contraband. The court also cited to *People v. Molnar*, 2021 IL App (2d) 190289, among other cases, and stated that that case "is not factually exactly the same as [this] case[,] *** but it is not way off from *Molnar* either."

¶ 17    The matter proceeded to a bench trial on February 22, 2022, during which the following evidence was presented.

¶ 18    Officer Symons testified that on May 30, 2019, he was working with Officers Rodriguez and Yanez. They were patrolling in an unmarked squad car. At approximately 12:51 p.m., the

officers conducted a traffic stop for failure to use a turn signal 100 feet prior to turning. The car stopped shortly after turning onto Ashland Avenue. Officer Rodriguez approached defendant on the driver's side, while Officers Yanez and Symons approached the passenger's side of the car. Officer Symons observed two occupants in the car. At some point, the occupants were asked to exit the car and taken to the front of the squad car. He later learned that they were asked to do so because defendant "was in possession of narcotics." The officers searched the car. Officer Symons located the key, on a key ring, still in the ignition. Using a key found in the ignition (or a key on the key ring), Officer Symons unlocked the glove compartment where he found a loaded black 9-millimeter Taurus handgun with a round in the chamber. After recovering the firearm, both occupants were placed in custody. Defendant informed the officers that she did not have a FOID card. Officer Symons later learned that defendant owned the car.

¶ 19    Officer Symons's body camera footage was again introduced into evidence.

¶ 20    The parties stipulated to the testimony of Officer Yanez from the suppression hearing. Specifically, they stipulated that Officer Yanez would testify substantially the same as Officer Symons as to events leading up to the traffic stop. He would also testify that, while standing on the passenger side of the car, he observed a compartment to the left of the steering wheel, which defendant opened to retrieve the requested documentation. He then observed Officer Rodriguez recover a bag of pills from that same compartment. Officer Yanez would testify that defendant stated that the pills were for her C-section surgery and, regarding the packaging of the pills in a bag, she stated that she did not like the rattling noise of the pill bottle.

¶ 21    It was also stipulated that defendant did not have a valid FOID card on the date of the incident.

¶ 22    Defendant made a motion for a directed finding, which the trial court denied.

¶ 23    Following closing arguments, the trial court found defendant guilty of AUUW. In so finding, the court stated the following:

> "The evidence clearly shows the car was her car, she had control of the car, she had control of the opening where they found these pills in the car [and] was not far from where the glove compartment was, and most importantly of all of it, she had the keys or key to the locked glove compartment where a gun was found at.
>
> ***
>
> *** There is no question in my mind that the State proved constructive possession of [the] gun, constructive possession. Her car, her keys, her glove compartment, especially locked with a key she had control of."

¶ 24    Defendant filed a motion for a new trial, arguing that the court erred in denying defendant's motion to quash arrest and suppress evidence and that the State failed to prove defendant guilty beyond a reasonable doubt.

¶ 25    On February 24, 2022, the trial court sentenced defendant to two years' probation.

¶ 26    This appeal followed.

¶ 27                                   II. ANALYSIS

¶ 28    Defendant raises two major contentions on appeal, one related to the motion to quash arrest and suppress evidence and the other related to sufficiency of the evidence. We address each in turn.[1]

---

[1]The traffic stop seemed to us, at first blush, to have been pretextual. We note however, the trial court's extensive inquiry and review of section 9-40-200(b) of the Chicago Municipal Code (Chicago Municipal Code § 9-40-200(b) (added July 12, 1990)) upon which the stop was based. Defendant raises no issue regarding the legitimacy of the stop.

¶ 29                          A. Motion to Quash Arrest and Suppress Evidence

¶ 30     Defendant first contends that the trial court erred in denying her motion to quash arrest and suppress evidence because the police lacked probable cause to search her vehicle based on viewing a blue-tinted, knotted plastic bag containing nondescript white pills.

¶ 31     On a motion to suppress, the burden of proving that a search or seizure was unlawful is on the defendant. 725 ILCS 5/114-12(b) (West 2018). If the defendant makes a *prima facie* showing that the evidence was obtained from an illegal search, the burden then shifts to the State. *People v. Cregan*, 2014 IL 113600, ¶ 23. A circuit court's ruling on a motion to suppress generally involves a mixed question of law and fact. *People v. Lampitok*, 207 Ill. 2d 231, 240 (2003).

¶ 32     When reviewing a trial court's ruling on a motion to suppress evidence, a reviewing court employs a two-part standard of review, that being manifest weight of the evidence and *de novo*. *People v. Lindsey*, 2020 IL 124289, ¶ 14. First, we will not reverse the trial court's factual findings unless they are against the manifest weight of the evidence. *Cregan*, 2014 IL 113600, ¶ 22. Second, the legal question of whether the evidence should be suppressed is subject to *de novo* review. *Id.*

¶ 33     The fourth amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. The Illinois Constitution similarly guarantees the right of the people "to be secure in their persons, houses, papers and other possessions" against unreasonable searches and seizures. Ill. Const. 1970, art. I, § 6. Therefore, generally, a search and seizure is reasonable under the fourth amendment only if the government first obtains a warrant issued after a finding of probable cause. *Illinois v. McArthur*, 531 U.S. 326, 330 (2001).

¶ 34     However, there are a few specific exceptions to the warrant requirement. *Cregan*, 2014 IL 113600, ¶ 25. At issue in this case is the plain view exception. There are three requirements for

the plain view exception to apply: (1) the officer was lawfully in a position from which to view the object seized in plain view, (2) the object's incriminating character was immediately apparent, and (3) the officer had a lawful right of access to the object itself. *People v. McCavitt*, 2021 IL 125550, ¶ 111.

¶ 35 Of the three requirements for the plain view exception, defendant only challenges the second, or the immediately apparent requirement. She asserts that "it was not, and could not have been, immediately apparent to the officers that the pills were evidence of a crime" and thus, the plain view exception to the search warrant requirement did not apply here. She further argues that the trial court's reliance on *Molnar*, 2021 IL App (2d) 190289, was in error because that case was wrongly decided.

¶ 36 In response, the State contends that the officers' training and experience in narcotics-related investigations and defendant's subsequent admission that the pills were hydrocodone were sufficient to establish probable cause to search defendant's car. The State also asserts that the trial court did not solely rely on *Molnar* in reaching its decision, but instead relied on a number of cases submitted by both parties as well as cases researched by the trial court itself, and in any case, *Molnar* was not wrongly decided.

¶ 37 Because the facts in this case are not in dispute, we review the trial court's legal ruling *de novo*. Under that standard and for the following reasons, we find the trial court's ruling proper where the officers had probable cause to search defendant's car pursuant to the plain view exception.

¶ 38 We consider first the concept of "immediately apparent." In *Texas v. Brown*, the United States Supreme Court gave consideration to the phrase, "immediately apparent," and noted that it was "an unhappy choice of words." 460 U.S. 730, 741 (1983) (opinion of Rehnquist, J., joined by

White, C.J., and O'Connor, J.). The Court stated that phrase "can be taken to imply that an unduly high degree of certainty as to the incriminating character of the evidence is necessary for an application of the 'plain view' doctrine." *Id.* On the contrary, " '[t]he seizure of property in plain view involves no invasion of privacy and *is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.*' " (Emphasis in original.) *Id.* at 741-42 (quoting *Payton v. New York*, 445 U.S. 573, 587 (1980)). Stated another way, "[t]he incriminating nature is immediately apparent if the officer has probable cause to believe that the object is evidence of a crime without searching further." *People v. Sinegal*, 409 Ill. App. 3d 1130, 1135-36 (2011); see also *People v. Jones*, 215 Ill. 2d 261, 277 (2005) (the "immediately apparent" or "probable cause" element requires "sufficient evidence to justify the reasonable belief that the defendant has committed or is committing a crime."). As such, in determining whether the object's incriminating character was immediately apparent, our focus is on probable cause.

¶ 39     "Probable cause means less than evidence which would justify a conviction" (*id.*) but more than a "mere suspicion" is necessary (*People v. Kidd*, 175 Ill. 2d 1, 22 (1996)). "To establish probable cause, it must be shown that the totality of the facts and circumstances known to the officer at the time of the search would justify a reasonable person in believing that the automobile contains contraband or evidence of criminal activity." *People v. Hill*, 2020 IL 124595, ¶ 23. We further recognize that "[p]robable cause deals with probabilities, not certainties" and "does not require an officer to rule out any innocent explanations for suspicious facts." *Id.* ¶ 24. Instead, probable cause "requires only that the facts available to the officer—including the plausibility of an innocent explanation—would warrant a reasonable [person] to believe there is a reasonable probability 'that certain items may be contraband or stolen property or useful as evidence of a crime.' " *Id.* (quoting *Brown*, 460 U.S. at 742). "[I]n deciding whether probable cause exists, a law

enforcement officer may rely on training and experience to draw inferences and make deductions that might well elude an untrained person." *Jones*, 215 Ill. 2d at 274; see also *People v. Petty*, 2017 IL App (1st) 150641, ¶ 31 (stating that a law enforcement officer views the facts through the lens of his experience and expertise and may draw inferences based on that experience in determining whether probable cause exists (citing *Ornelas v. United States*, 517 U.S. 690, 699-700 (1996))).

¶ 40    In the case before us, the evidence showed that it was immediately apparent to Officer Yanez, *i.e.*, he had probable cause to believe, that the white pills in the blue-tinted, knotted baggie were illegal narcotics based on his narcotics training and over 100 narcotics arrest during his six-year career. He specifically testified: "From my experience, the way I have seen narcotics packaged, I believe[d] it to be narcotics." His reasonable belief was further bolstered when defendant informed the officers that the pills were hydrocodone, which he immediately knew to be a controlled substance. Officer Yanez also testified that he was aware of a law making it unlawful to store prescription drugs in a non-labeled container, and in any case, defendant did not offer a prescription for the hydrocodone. Although the white pills could have been prescribed to the defendant, probable cause does not require that Officer Yanez knew with absolute certainty that the pills in the baggie were unlawfully possessed. See *Sinegal*, 409 Ill. App. 3d at 1135 ("[P]robable cause to believe that a package contains contraband does not require absolute certainty." (citing *Brown*, 460 U.S. at 742)). Accordingly, given Officer Yanez's training and experience, we conclude that he had probable cause to believe that the white pills found in a blue-tinted, knotted plastic baggie contained illegal narcotics. See *Jones*, 215 Ill. 2d at 281 ("Law enforcement experience is relevant in determining probable cause ***.").

¶ 41    Defendant argues that "the presence of an innocuous object—white pills—especially where [defendant] provided a lawful justification for having the pills" did not give rise to probable

cause to search her car. We disagree with this argument. Although she may have been justified in possessing the hydrocodone, an officer does not have "to rule out any innocent explanations for suspicious facts." *Hill*, 2020 IL 124595, ¶ 24. The pills might have in fact appeared innocuous to the officer had they been packaged in an original pill bottle and properly labeled. The packaging was suspect, and based on the officer's six years of experience and narcotics training, he reasonably believed the baggie contained contraband.

¶ 42    Defendant repeatedly points out that "no evidence that the pills were, indeed, contraband ever came to light, where [she] was never charged with a narcotics offense stemming from this incident." Defendant's point, however, is not pertinent to our probable cause analysis. That defendant was not ultimately charged with a drug-related offense has no bearing on whether at the time of the stop the officer had probable cause to believe that the pills constituted evidence of a crime. There is no requirement under the fourth amendment that a valid search must actually uncover evidence of the crime suspected. We are aware of no case standing for such proposition, and defendant cites to none.

¶ 43    In addressing the parties' cited cases for support, we first note that the opinion of one appellate court district, division, or panel is not binding on others. *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008).

¶ 44    Defendant cites *People v. Garcia*, 2012 IL App (1st) 102940, as instructive. In *Garcia*, the trial court found that the officers had probable cause to seize a clear plastic baggie protruding from the defendant's front pocket under the plain view exception. *Id.* ¶ 2. The officer testified that, based upon her more than 13 years of experience, including over 300 narcotics-related arrests, she believed that the clear, knotted plastic baggie might contain illegal narcotics. *Id.* ¶ 8. On appeal, this court concluded that "[b]ased on the circumstances of the traffic stop and objectively looking

at the totality of the circumstances known to [the officer] when she made the stop," the officer did not have probable cause to seize the bag from the defendant's pocket. *Id.* ¶ 11.

¶ 45    *Garcia* is distinguishable. Here, unlike in *Garcia*, the officers could plainly see the entire bag and that it contained a number of white pills, which the officers learned was hydrocodone, and defendant admittedly did not have a prescription with her. We find a wide evidentiary gap between merely seeing a portion of a clear, plastic bag, a common household item used for a number of innocuous purposes, and seeing a blue-tinted, knotted baggie containing pills, which is not a common way to carry prescribed medication. Therefore, we do not find *Garcia* instructive.

¶ 46    Defendant also cites *People v. Humphrey*, 361 Ill. App. 3d 947, 953 (2005). There, the defendant was pulled over for speeding. When the state trooper approached the car, he observed a small, clear plastic container holding several hundred small white tablets underneath the passenger's seat, as well as loose tinfoil. *Id.* at 948-49. The trooper requested that the passenger hand him the container, and when the passenger did so, he informed the trooper that the pills were pseudoephedrine. *Id.* at 949. The trooper had the passenger step out of the car, and the passenger stated that he was going to take the pills to Missouri to make methamphetamine. *Id.* More pills were found during the trooper's search of the car, and the defendant also stated that they were going to make methamphetamine with the pills. *Id.* The trooper later testified that the number of pills in the container led him to believe they were contraband. *Id.*

¶ 47    On appeal, this court concluded that the plain view exception did not apply because the incriminating nature of the container of pills was not immediately apparent. *Id.* at 950. The court pointed to the trooper's testimony that he did not know what the pills were and he was not sure, even after learning that they were pseudoephedrine, whether their possession constituted a chargeable offense. *Id.* at 951. The court also rejected the State's contention that its holding

"create[s] a requirement of near certainty on the part of an officer." *Id.* Rather, the court stated that "there need be only sufficient evidence to justify the reasonable belief that the defendant has committed or is committing a crime," which was not present in the case before it. *Id.*

¶ 48 We find, as we did with *Garcia*, the facts in *Humphrey* to be distinguishable from the instant case. In *Humphrey*, unlike in this case, the state trooper testified that, at the time he conducted the search, he was not sure what the pills were and once he learned the pills were pseudoephedrine, he was still unsure if possession of pseudoephedrine was illegal. *Id*. at 950-51. There was also an insufficient foundation laid to evidence the trooper's experience and training to support his warrantless search. Contrarily, in this case, Officer Yanez unequivocally stated that he knew hydrocodone to be a narcotic and that the packaging of the pills based on his narcotics training, six years of experience, and over 100 narcotics arrests suggested criminal activity. See *People v. Lee*, 2018 IL App (3d) 160100, ¶ 20 ("A substance or item's packaging and/or location can legally justify a seizure."); see also *Molnar*, 2021 IL App (2d) 190289, ¶ 18 (distinguishing *Humphrey* on the basis that the officer in the case before it believed the pills were contraband prior to seizing them and the officer knew Xanax was a controlled substance requiring a prescription). As such, the analysis in *Humphrey* is unavailing.

¶ 49 Defendant also asserts that the trial court erred in relying on *Molnar* as support for its denial of the motion. She contends that *Molnar* was wrongly decided in that the court there "ignores the stringency of the 'immediately apparent' requirement of the plain view exception," or, in the alternative, "even if it were not wrongly decided, the facts of *Molnar* are distinguishable from those in the instant case."

¶ 50 In *Molnar*, a police officer responded to a call regarding two vehicles stopped in relation to a reported altercation. 2021 IL App (2d) 190289, ¶ 4. The officer approached one of the vehicles,

where the defendant was seated in the front passenger seat. *Id.* The defendant exited the vehicle without being asked, and as she did so, the officer shined a flashlight into the vehicle. *Id.* ¶ 5. He asked the defendant about a pill bottle he observed on the passenger seat. The defendant responded that it was her Xanax, and she retrieved the bottle, which did not have a label, and handed it to the officer. The officer saw that the bottle contained pills as well as a plastic baggie, and he asked why the bottle did not have a label. The defendant responded that she took the pills from her house and that her husband did not know she took Xanax. She also denied having a prescription for the pills and stated that she "got them from somebody." She did not know what was in the plastic baggie. *Id.* The officer testified that he knew Xanax to be a controlled substance and he believed the pills to be illegal as soon as he saw them. *Id.* ¶ 6. An examination of the bottle showed that it contained different types of pills, and residue in one of the baggies tested positive for cocaine. *Id.* The trial court denied the defendant's motion to suppress. *Id.* ¶ 7.

¶ 51    As in the case before us, the defendant argued on appeal that the incriminating nature of the pills was not immediately apparent. *Id.* ¶ 13. The Second District of this court concluded that the incriminating nature of the pills was immediately apparent and the pills were thus lawfully seized. *Id.* ¶ 18. The court's determination was based on the officer's testimony that (1) he believed the pills were contraband before being seized; (2) he immediately knew that Xanax, which the defendant admitted they were, was a controlled substance requiring a prescription; and (3) he believed the packaging, *i.e.*, an unlabeled bottle with baggies inside, demonstrated that the defendant likely did not have a prescription. *Id.*

¶ 52    Contrary to defendant's posture, we find the facts in *Molnar* similar enough to those before us to support our conclusion that the search of defendant's car was valid. Here, Officer Yanez testified that he believed the blue-tinted, knotted plastic baggie containing white pills to be illegal

narcotics based on his six years of experience and over 100 narcotics arrests, and he also knew hydrocodone, which defendant admitted it was, to be a controlled substance. The only difference worth noting is that, in *Molnar*, the defendant admitted to not having a prescription, and here, defendant stated that she had them for her C-section surgery. However, as we have already stated, an officer is not required to take as fact explanations offered if he or she believes that the item is contraband. Moreover, defendant did not have her prescription with her.

¶ 53    Defendant additionally argues that the *Molnar* court erroneously relied on section 312(g) of the Illinois Controlled Substances Act (720 ILCS 570/312(g) (West 2018)) to support its finding that there was probable cause to search the car. The provision states: "A person to whom or for whose use any controlled substance has been prescribed or dispensed by a practitioner *** may lawfully possess such substance only in the container in which it was delivered to him or her by the person dispensing such substance." *Id*. Specifically, defendant argues that the *Molnar* court misinterpreted this section because the provision has no penalty for its violation and thus a violation of the provision does not constitute a "crime." She further contends that section 312(g) of the statute is "geared towards the registration and regulation of entities dispensing narcotics" and should not be used to justify warrantless searches under the fourth amendment.

¶ 54    In *Molnar*, the court cited to this provision in support of its finding and rejected the defendant's argument that the provision "says nothing to suggest that the original label must remain on the bottle." 2021 IL App (2d) 190289, ¶ 18. The court stated that the logical inference from an unlabeled bottle containing pills and a plastic baggie is that the container is not the original container for the controlled substance. *Id.* Thus, the violation of that statutory provision supported the court's finding of probable cause. *Id.*

¶ 55    In the case before us, Officer Yanez generally cited the requirement that "whenever you're prescribed a narcotic prescription, it's supposed to be in prescription bottle with your name on it," which he stated was a law but he could not recite the exact statutory provision. In our view, the reference to the statute was not to suggest that the search was entirely premised on the violation thereof. Rather, the violation of the statute was merely one factor, among several, about which Officer Yanez had knowledge and therefore probable cause to believe that the pills were contraband. Our analysis here is similar in that we considered Officer's Yanez experience and expertise, his knowledge of the substance, the packaging, the lack of a prescription on defendant's person, *and* the violation of this statutory provision. Contrary to defendant's assertion, whether defendant could have been charged and penalized for violating section 312(g) in this case is not a necessary predicate for the finding of probable cause.

¶ 56    Notably, our supreme court in *Hill* has held that "[c]ontraband *** encompasses all items that are unlawful to possess, regardless of the accompanying penalty." 2020 IL 124595, ¶ 30. Concerning cannabis, the court explained that probable cause to search for evidence of a crime can exist even though there are circumstances where the observed contraband may be possessed lawfully. *Id.* ¶¶ 34-36. In so concluding, the court cited several cases involving lawful vehicle searches based on the smell of alcohol or observations of open containers, even though it is not unlawful to simply possess alcohol in a vehicle. See *id.* ¶ 36. Similarly, we conclude that, although there appears to be no accompanying penalty for violation of section 312(g), the possession of narcotics in a container other than a labeled prescription bottle reasonably gives rise to a strong inference of illegality.

¶ 57    Finally, although we believe probable cause existed for the seizure even absent reference to section 312(g), we nonetheless express our disagreement, both with defendant's characterization

of the purpose of the statute as well her proposed limitation on its use. First, although section 312 is titled as "Requirements for dispensing controlled substances" (720 ILCS 570/312(g) (West 2018)), the Illinois Controlled Substances Act, read as a whole, was enacted with the intent "to provide a system of control over the distribution *and use of* controlled substances" and to "deter the unlawful and destructive abuse of controlled substances." (Emphasis added.) *Id*. § 100. This intent broadly applies to all those involved in the dispensing and use of controlled substances. As such, although the inclusion of a provision directed towards individuals, as opposed to the entities dispensing controlled substances, in section 312 is seemingly misplaced, that does not negate the applicability of the provision. Second, as the State points out, the provision at bar is directed at the person, defined as "any individual *** or any other entity," in possession of the controlled substance. Id. §§ 102(gg), 312(g). Therefore, despite the absence of a specific penalty for a violation of section 312(g), clear from its language is the legislature's intent that prescribed controlled substances be maintained in the original container in which they were dispensed.

¶ 58    Accordingly, we reject defendant's arguments on appeal and find that the trial court did not err in denying the motion to quash arrest and suppress evidence.

¶ 59                          B. Sufficiency of the Evidence

¶ 60    Defendant next argues that the evidence presented at the bench trial was insufficient to prove beyond a reasonable doubt that she constructively possessed the firearm recovered from her car. The State responds that there was ample evidence to support the finding of constructive possession where the firearm was located in the locked glove compartment of defendant's car, to which she possessed a key, and she was driving the car at the time of the stop.

¶ 61    When a defendant challenges the sufficiency of the evidence against him, this court must determine " 'whether, after viewing the evidence in the light most favorable to the prosecution,

*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A reviewing court will not retry the defendant or substitute its judgment for that of the trier of fact with regard to the credibility of witnesses or the weight to be given to each witness's testimony. *People v. Jackson*, 232 Ill. 2d 246, 281 (2009). A defendant's conviction will be reversed only when the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of his guilt. *People v. Newton*, 2018 IL 122958, ¶ 24.

¶ 62    We reiterate that the "determination of the weight to be given to witnesses' testimony, their credibility, and the reasonable inferences to be drawn [therefrom] from the evidence" are well within the purview of the trier of fact. *People v. Steidl*, 142 Ill. 2d 204, 226 (1991). Additionally, a criminal conviction "may be based solely on circumstantial evidence"; however, "the same standard of review applies whether the evidence is direct or circumstantial." *People v. Brown*, 2013 IL 114196, ¶ 49.

¶ 63    The State has the burden of proving beyond a reasonable doubt each element of an offense. *People v. Gray*, 2017 IL 120958, ¶ 35. In the instant case, defendant was found guilty of AUUW pursuant to section 24-1.6 of the Code (720 ILCS 5/24-1.6 (West 2018)), and she was found to have had constructive possession of the firearm without a FOID card pursuant to certain subsections, which, in total, provide as follows:

> "(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly;
>
> > (1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode,

legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; and

\* \* \*

(3) One of the following factors is present:

\*\*\*

(A-5) the pistol, revolver, or handgun possessed was uncased, loaded, and immediately accessible at the time of the offense and the person possessing the pistol, revolver, or handgun has not been issued a currently valid license under the Firearm Concealed Carry Act [(420 ILCS 66/1 *et seq*. (West 2018))]; or

\* \* \*

(C) the person possessing the firearm has not been issued a currently valid Firearm Owner's Identification Card[.]" *Id*. § 24-1.6(a)(1), (a)(3)(A-5), (a)(3)(C).

Accordingly, as relevant here, the State was required to establish beyond a reasonable doubt that (1) defendant knowingly carried a firearm in any vehicle; (2) the firearm was uncased, loaded, and immediately accessible to defendant; and (3) defendant possessed neither a valid FOID card nor a CCL.

¶ 64 In the instant case, there is no dispute that the firearm was found in a car that defendant owned and was driving at the time. It is not disputed that the firearm was retrieved from the glove compartment, that it was uncased and loaded, and that defendant did not possess a valid FOID card

or CCL. The only element of the crime that defendant disputes on appeal is whether she knowingly possessed a firearm. Because the firearm was not found on defendant's person, constructive possession, as opposed to actual possession, is at issue. Defendant argues that the trial court erred in finding constructive possession. Specifically, she asserts that her status as the owner and driver of the car was not conclusive as to constructive possession: neither of the officers saw her touch the firearm at any point, she never made any statements suggesting she had knowledge of the firearm, and there was a passenger in the car who was sitting closer to the glove compartment.

¶ 65    "Possession may be actual or constructive and is often proved with circumstantial evidence." *People v. Jackson*, 2019 IL App (1st) 161745, ¶ 27. To prove constructive possession, the State must establish a defendant's knowledge and control of the contraband. *Id.* "Knowledge may be inferred from the surrounding circumstances, such as the defendant's actions, declarations, or other conduct, which indicate that the defendant knew the contraband existed in the place where it was found." *Id.* To establish control, the State must prove that a defendant had "immediate and exclusive control" over the location where the contraband was recovered. *Id.* Where control has been established, an inference of culpable knowledge can be drawn from the surrounding facts and circumstances. *Id.* (citing *People v. Givens*, 237 Ill. 2d 311, 335 (2010)). Possession is an issue of fact, and "we will not disturb the trier of fact's findings on these questions unless the evidence is so unbelievable or improbable that it creates a reasonable doubt as to the defendant's guilt." *People v. Miller*, 2018 IL App (1st) 152967, ¶ 9.

¶ 66    Here, the gun was found in the car's locked glove compartment. Defendant owned the car and was driving it when stopped by the police. See *People v. Bogan*, 2017 IL App (3d) 150156, ¶ 32 (stating that proof of ownership of a vehicle is not sufficient by itself to demonstrate control but it is highly probative of control). There was no evidence that any other person owned the car

or shared the car with defendant. The key to the glove compartment was in the ignition (or on the key ring that held the ignition key) at the time of the stop. There was no evidence of another key that would open the glove compartment or whether the passenger had access to the key. Based on this evidence, we find that a rational trier of fact could have found that defendant had immediate and exclusive control over the glove compartment where the gun was found. See *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17 ("The defendant's control over the location where the weapons are found gives rise to an inference that he possessed the weapons.").

¶ 67    We also find that a rational trier of fact could have found that defendant had knowledge of the gun's presence in her car. As stated previously, where control has been established, as it has here, knowledge may be inferred based on the surrounding facts and circumstances. See *Bogan*, 2017 IL App (3d) 150156, ¶ 45. We agree with defendant's assertion that a person's status as owner and driver of the car is not dispositive as to knowledge. However, in the circumstances before us, that status weighs heavily in favor of finding that defendant had knowledge of the gun. Considering there was no evidence presented otherwise to explain its presence in defendant's locked glove compartment, it would be reasonable to infer that defendant had knowledge of the gun. See *People v. Bush*, 214 Ill. 2d 318, 326 (2005) (this court "must allow all reasonable inferences from the record in favor of the prosecution").

¶ 68    Defendant suggests that the passenger also could have had a key to the glove compartment, which effectively negates a finding of constructive possession. We note that "the mandate to consider all the evidence on review does not necessitate a point-by-point discussion of every piece of evidence as well as every possible inference that could be drawn therefrom." *People v. Wheeler*, 226 Ill. 2d 92, 117 (2007). Nonetheless, we disagree with defendant's contention. First, "[a] reviewing court has neither the duty nor the privilege to substitute its judgment for that of the trier

of fact" (*People v. Abdullah*, 220 Ill. App. 3d 687, 693 (1991)), and this point was argued and rejected at the bench trial. Further, the trier of fact, in this case the trial court, "is not required to disregard inferences that flow normally from the evidence before it" and need not raise every possible explanation consistent with innocence to the level of reasonable doubt. *People v. Jackson*, 2020 IL 124112, ¶ 70. A normal inference that flows from evidence that defendant owned the car and the key to the locked glove compartment was in the ignition is that defendant had knowledge and control over what was in her glove compartment. See *Bogan*, 2017 IL App (3d) 150156, ¶ 36 ("Because such an inference is reasonable, it is allowed, and this court must defer to the trier of fact."). In contrast, we cannot say that it would be typical to infer that the passenger, of whom there was no evidence of a relationship to defendant, may also have had his or her own key to the glove compartment. As such, this argument fails.

¶ 69    On this record, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that defendant had constructive possession of the gun.

¶ 70    We are also not persuaded by the cases to which defendant cites for support of her argument that the State did not present sufficient evidence on the issue of constructive possession. In *People v. McIntyre*, 2011 IL App (2d) 100889, ¶ 4, the police were called to the scene of a shooting that involved the SUV which the defendant was driving. En route, the officers identified the SUV and pulled it over. *Id.* The defendant and the passenger were ordered out of the car, and the officer saw one or two inches of a gun sticking out from underneath the passenger seat. The passenger admitted at trial that he shoved the gun under the seat. *Id.* ¶ 5. There was also testimony from a witness that the passenger was the individual who pulled out a gun and fired it. *Id.* ¶ 3. Following a jury trial, the defendant was found guilty of unlawful possession of a weapon by a felon and possession of a

firearm without a FOID card. *Id.* ¶ 9. On appeal, this court reversed and held that the evidence did not establish that the defendant had control over the weapon where the gun was found in an opening between the base of the front passenger seat and the leather portion of the seat, on the side closest to the passenger side door. *Id.* ¶ 18.

¶ 71 We find the facts in *McIntyre* clearly distinguishable from those in the case before us. In *McIntyre*, there was considerable testimony presented at trial that the passenger was wielding the gun shortly before the traffic stop was conducted and the passenger admitted that he placed the gun under his seat. *Id.* ¶¶ 3-7. No such testimony regarding the passenger in this case was presented. Defendant here, as the sole owner and driver of the car, cannot transfer possession of the gun found in her locked glove compartment onto her passenger without any evidence to support such a conclusion. Another distinction relates to the location of the gun. In *McIntyre*, the gun was found easily accessible to the passenger under the passenger seat, whereas, here, the gun was in a locked glove compartment, and there was no evidence that the passenger had a key to it. As such, we find *McIntyre* inapposite.

¶ 72 Defendant also cites to *People v. Wise*, 2021 IL 125392, for support. There, police officers conducted a traffic stop on a speeding minivan driven by the defendant. *Id.* ¶ 3. There were two passengers in the van: one in the front passenger seat and one in the farthest rear passenger seat. *Id.* After police detected the odor of burnt cannabis, a search of the vehicle was conducted. *Id.* ¶ 4. An officer found a firearm and two rounds of ammunition "in the rear passenger compartment [in] kind of like [a] little cupholder armrest, inside a glove." (Internal quotation marks omitted.) *Id.* The officer testified that the defendant stated that his brother owned the van, he knew the gun was in the van, and the gun belonged to a friend of his who had also borrowed the van previously. *Id.* ¶ 6. An individual testified at trial for the defense that he owned the gun, he placed it in the glove

away from the driver's seat because he did not have a concealed carry license, and he left it there for several weeks. *Id.* ¶ 9. One of the passengers testified that he did not know of the gun's presence in the van and he heard the defendant state to the police that he did not know about the gun's presence. *Id.* ¶ 10. The defendant also testified that he did not know the gun was in the van and he never touched it. *Id.* ¶ 11. The trial court found the defendant guilty of unlawful possession of a weapon by a felon. *Id.* ¶ 12.

¶ 73 On appeal, this court concluded that the State failed to prove defendant guilty beyond a reasonable doubt of unlawful possession of a weapon by a felon. *Id.* ¶ 18. The supreme court affirmed this court's judgment vacating the defendant's conviction. *Id.* ¶ 41. In concluding that the State did not prove constructive possession, the court noted that, although the defendant knew the weapon was in the van, there was no evidence that the defendant owned the van, the weapon was found closest to the passenger in the third row of the van out of the defendant's reach, the officers did not see the defendant touch the weapon, and the defendant's fingerprints were not found on it. *Id.* ¶ 34.

¶ 74 Again, we find these facts distinguishable from those before this court. In particular, there is quite a distinction between a gun in the glove compartment within reach of the driver's seat and a gun in a cupholder in the third row of a van, 5 to 10 feet away from the driver's seat. See *id.* The proximity of the gun to defendant in this case supports the finding of constructive possession, where it supported the opposite conclusion in *Wise*. Moreover, there was testimony in *Wise* that the defendant did not know the gun was in the van and the defendant was not the owner of the van. For these reasons, we do not find *Wise* analogous.

¶ 75 Finally, the State asserts that defendant's argument is "ultimately foreclosed by *People v. Jones*, 2023 IL 127810." Although we would not go so far as to say her argument is conclusively

foreclosed, we nonetheless find *Jones* instructive here. In *Jones*, the defendant was arrested following a traffic stop, during which the police officer searched her car and found two rounds of .40-caliber ammunition in the glove compartment. *Id.* ¶ 4. When the officer informed defendant that she was going to be arrested for possession of ammunition, she responded that it belonged to her husband. *Id.* The defendant testified at trial that, although she did not know that the ammunition was in the car, she knew the ammunition to be her husband's because they shared the car and he owned guns and had a FOID card. *Id.* ¶ 6. Her husband also testified that the ammunition was his and he had a FOID card. *Id.* ¶ 7. Further, he stated that he would drive the car, which was registered in the defendant's name only, to and from East St. Louis, where his children lived, and when he did so, he would store his gun in a case in the trunk and the clip, or the ammunition, in the glove compartment. *Id.* Ultimately, the jury found defendant guilty of unlawful possession of ammunition by a felon. *Id.* ¶ 14. On appeal, the Fourth District of this court affirmed the conviction. *Id.* ¶ 16.

¶ 76    Our supreme court upheld the Fourth District's ruling, finding that the evidence was sufficient to prove the defendant guilty beyond a reasonable doubt. *Id.* ¶ 32. The court first concluded that the evidence supported a finding that the defendant had control over the premises where the ammunition was located because the defendant was the only registered owner of the car and the ammunition was found in the glove box when the defendant was stopped while driving. *Id.* ¶ 33. In addressing the defendant's knowledge of the ammunition, the court noted that "where possession has been shown, an inference of culpable knowledge can be drawn from the surrounding facts and circumstances." *Id.* ¶ 34. The evidence showed that the defendant informed the police that the ammunition belonged to her husband, and her husband testified that the defendant knew that he transported his gun in her car. *Id.* ¶ 35. The court also stated that, although

the defendant testified that she did not know the ammunition was there, the trier of fact did not have to accept that testimony as true. *Id.* ¶ 37. As such, the court concluded that it was reasonable for the trier of fact to infer that the defendant knowingly possessed the ammunition. *Id.*

¶ 77 We acknowledge that this case differs slightly from *Jones* in that, in *Jones*, there was no passenger in the car and the glove compartment was not locked. However, as the defendant here likewise owned the car and the gun was found in the glove compartment, an inference of knowledge can be made based on the surrounding facts and circumstances. Indeed, the fact that the glove compartment was locked in this case is arguably stronger evidence of knowledge and possession where there was no evidence that anyone other than defendant had the key to the glove compartment. In contrast, in *Jones*, there was affirmative evidence that a person, other than the driver and owner of the car, had access to the glove compartment and regularly stored ammunition there. As such, we find *Jones* supportive of our conclusion that defendant had both knowledge of the gun and control of the location where it was found.

¶ 78 Accordingly, we conclude that there was sufficient evidence to prove defendant guilty beyond a reasonable doubt of the offense of AUUW.

¶ 79                                   III. CONCLUSION

¶ 80 For the reasons stated, we affirm the judgment of the circuit court.

¶ 81 Affirmed.

***People v. Mallett*, 2023 IL App (1st) 220920**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CR-9026; the Hon. Stanley J. Sacks, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Adrienne E. Sloan, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Brian Levitsky, and Whitney Bond, Assistant State's Attorneys, of counsel), for the People. |